No. 22-0219 – *State v. Hagerman*

**FILED**
**November 9, 2023**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

BUNN, Justice, concurring, joined by Justice Armstead:

I agree with the majority's determination that, *under the specific facts of this case*, the circuit court did not violate Mr. Hagerman's right to a randomly selected jury representing a fair cross-section of the community by excluding certain individuals from the jury panel based on the geographic location of their residences. Here, Mr. Hagerman received a fair trial with a randomly selected and impartial jury. Consequently, I agree with the majority's conclusion to affirm the conviction.

While Mr. Hagerman received a fair trial, I write separately to express my concern in other circumstances—where a circuit court judge removes certain jurors from a jury panel sua sponte and without notice to the parties—which could easily run afoul of the protections in the United States Constitution, the West Virginia Constitution, and the West Virginia Code. As correctly stated in the majority opinion, both the Sixth Amendment of the United States Constitution and article III, section 14 of the West Virginia Constitution provide for a right to a jury trial in all criminal proceedings.[1] Furthermore, West Virginia Code § 52-1-1 provides that,

---

[1] *See* Syl. pt. 4, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994) ("'The right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14 of the West Virginia Constitution. A meaningful and effective *voir*

[i]t is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all citizens have the opportunity in accordance with this article to be considered for jury service and an obligation to serve as jurors when summoned for that purpose.

I do not disagree with the majority's conclusion that "circuit court judges are afforded a certain amount of discretion in the jury selection process." *State v. Hagerman*, No. 22-0219, slip op. at 11 (W. Va. Nov. 9, 2023) (citing *State ex rel. Stanley v. Sine*, 215 W. Va. 100, 107, 594 S.E.2d 314, 321 (2004). Nor do I disagree that "'a trial court is entitled to rely upon its self-evaluation of allegedly biased jurors in determining actual juror bias.'" *Hagerman*, No. 22-0219, slip op. at 11 (quoting *State v. Miller*, 197 W. Va. 588, 605, 476 S.E.2d 535, 552 (1996)). However, the Legislature, in establishing that jurors must "be selected at random from a fair cross section of the population," requires circuit courts to follow a detailed process for the selection of petit jury members. W. Va. Code § 52-1-1. The Legislature has also created a process for all parties—including criminal defendants—to timely object to that process. *See* W. Va. Code § 52-1-15.

West Virginia Code §§ 52-1-6 to -9 sets forth a process for the random selection of petit jury panel members from which a trial jury is ultimately selected.[2]

---

*dire* of the jury panel is necessary to effectuate that fundamental right.' Syllabus Point 4, *State v. Peacher*, 167 W. Va. 540, 280 S.E.2d 559 (1981).").

[2] *See* W. Va. Code § 52-1-6 (providing for a jury wheel or jury box and the random selection of names from a master list to be included in the jury wheel or jury box). *See also* W. Va. Code § 52-1-7(a) ("The chief judge of the circuit, or the judge in a single

Certainly, West Virginia Code § 52-1-8(a) requires the circuit court to "determine whether any prospective juror is disqualified for jury service on the basis of information provided on the juror qualification form or interview with the prospective juror or other competent evidence."[3] However, under no circumstances may "[a] citizen [] be excluded from jury service on account of race, color, religion, sex, national origin, economic status or being a qualified individual with a disability." W. Va. Code § 52-1-2.

A party may challenge "compliance with [jury] selection procedures" by following a process established by the Legislature. *See* W. Va. Code § 52-1-15 (entitled "Challenging compliance with selection procedures"). Specifically,

> [w]ithin seven days after the moving party discovers, or by the exercise of due diligence could have discovered, the grounds [to challenge jury selection procedures], and in any event before the petit jury is sworn to try the case, a party may move to stay the proceedings, quash the indictment or move for other relief as may be appropriate under the circumstances or the nature of the case.

---

judge circuit, shall provide by order rules relating to the random drawing by the clerk of panels from the jury wheel or jury box for juries in the circuit and magistrate courts. The rules may allow for the drawing of panels at any time. Upon receipt of the direction and in the manner prescribed by the court, the clerk shall publicly draw at random from the jury wheel or jury box the number of jurors specified."); W. Va. Code § 52-1-7a (provides for an "[a]lternate procedure for selection of jury" by electronic methods or a combination of manual and electronic methods); W. Va. Code § 52-1-9(a) ("The jurors drawn for jury service shall be assigned at random by the clerk to each jury panel in a manner prescribed by the court.").

[3] West Virginia Code § 52-1-8(b) establishes certain circumstances when a prospective juror is disqualified to serve on a jury.

W. Va. Code § 52-1-15(a). In its motion to stay, quash, or request other relief, the party must explain "the facts which support the party's contention that there has been a substantial failure to comply with [W. Va. Code §§ 52-1-1 to -26] in selecting the jury." *Id.* In the absence of fraud, this procedure is the "exclusive means" for a party to "challenge a jury on the ground that the jury was not selected in conformity with [W. Va. Code §§ 52-1-1 to -26]." *Id.* at § 52-1-15(c).

Consequently, these statutes regarding the selection of jurors and the procedures to challenge that selection process illustrate that while the circuit court retains some discretion regarding the disqualification of potential jurors, the circuit court must inform the parties of any disqualifications so that a party may timely challenge the jury selection process. If a circuit court fails to follow Legislative directives and requests that specific potential jurors be removed from the jury wheel or box, and the parties are not made aware of those requests in open court or by other notice prior to trial, the parties lack the necessary information to properly challenge jury selection pursuant to § 52-1-15. A circuit court obscuring the selection process makes it impossible for a party to know whether a violation of the statutory selection process occurred.

Corresponding with a defendant's Sixth Amendment right to an "impartial jury," jury selection must not occur in secret, hidden from the parties. One cannot determine whether the defendant's right to an impartial jury has been violated if the defendant is unaware of the circumstances surrounding the jury panel's selection. Of

4

particular concern is a scenario in a criminal case, however unlikely, where a circuit court improperly—and secretly—asks a circuit clerk to remove individuals from the jury wheel or box who meet certain criteria, such as those of a particular "race, color, religion, sex, national origin, economic status or being a qualified individual with a disability." While that scenario did not happen in the case here, circuit courts must protect the integrity of the jury selection process by following the West Virginia Code's requirements. This process ensures juries consist of a random, fair cross-section of the population, in turn protecting a criminal defendant's constitutional rights. For these reasons, I respectfully concur with the majority's opinion in this case. I am authorized to state that Justice Armstead joins in this concurrence.